UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
New Albany Division

AMANDA HOOK
3601 W State Road 256
Madison, IN 47250

      Plaintiff

v.

NICOLE NORVELL
402 West Washington Street
IGCS W361 Room OECOSL
Indianapolis, IN 46204

DEBBIE SAMPSON
402 W Washington St., Room W361
Indianapolis, IN 46204

KELLY SCHMELZLE
1101 N. Jim Day Rd., Ste. 109
Salem, IN 47167

CHRISTINE FEATHERSTONE
493 W. Hutchison Lane, Suite B
Madison, Indiana 47250

CATHY HODGE
1025 E. Freeland Road
Greensburg, IN 47240

FILED
MAR 15 2019
US DISTRICT COURT
NEW ALBANY DIVISION

Claim No.:

4 : 19-cv- 0049 TWP -DML

## COMPLAINT AND REQUEST FOR TRIAL BY JURY

Now into Court comes Plaintiff, Amanda Hook, through undersigned counsel and files this Complaint and Request for Trial by Jury against the Defendants, and alleges as follows:

1

## I. NATURE OF THE ACTION

Mrs. Hook brings this action in order to recover damages based upon:

a. Deprivation of rights protected under 42 U.S.C. § 1983, specifically violations of Mrs. Hook's rights guaranteed by Fifth Amendment's Due Process Clause extended and guaranteed to her under the Fourteenth Amendment, and supplemental State tort claims.

b. Mrs. Hook seeks damages, declaratory judgment, costs and attorney's fees associated with bringing this suit, as well as punitive damages, incurred as a proximate result of the Defendants' actions.

## II. JURISDICTION AND VENUE

1. This suit is brought and jurisdiction lies pursuant to 28 U.S.C. §§1331, 1343 and 2201. This suit is a legal action for damages pursuant to 42 U.S.C. §1983 and supplemental State tort claims.

2. This Court has jurisdiction over the Supplemental State claims set out herein pursuant to 28 U.S.C. §1367.

3. All Defendants reside, may be found, or transact business within the Southern District of Indiana.

4. This Court has personal jurisdiction over the Defendants who at all times relevant conducted business in Jefferson County, Indiana.

5. Venue is appropriate in this Court because of the proximity of this Court to Jefferson County, Indiana.

## III. PARTIES

6. Plaintiff, Amanda Hook ("Mrs. Hook"), is a person of the full age of majority and at all times relevant was a resident of Jefferson County, Indiana.

7. Nicole Norvell ("Defendant Norvell") is the Director of the Family and Social Services Administration, and at all times relevant was responsible for matters regarding the events complained of in this action.

8. Debbie Sampson ("Defendant Sampson") is the Manager of the Family and Social Services Administration, and at all times relevant was responsible for matters regarding the events complained of in this action.

9. Kelly Schmelzle ("Defendant Schmelzle") is a Licensing Consultant with the Family and Social Services Administration, and at all times relevant was responsible for matters regarding the events complained of in this action.

10. Christine Featherstone ("Defendant Featherstone") is a Case Worker with the Family and Social Services Administration, and at all times relevant was responsible for matters regarding the events complained of in this action.

11. Cathy Hodge ("Defendant Hodge") works for the Indiana Department of Child Services and at all times relevant was responsible for matters regarding the events complained of in this action.

## IV.   FACTS

12. Mrs. Hook is the owner and operator of Hook's Child Daycare, an unincorporated entity which operates three separate facilities in the Madison, Indiana area.

13. Each separate facility is required to have a separate operating license.

14. On or about January 24, 2017, Mrs. Hook was required to sign a Consent Agreement restricting Mr. Hook's ability to be in a child care home during child care hours after it was learned that he was under investigation for child molestation.  The agreement stated in relevant part:  **"Joseph Hook II (JD) will not be allowed in any of the child care**

**homes during child care hours.**" (emphasis in original) No other restrictions were imposed.

15. On or about March 17, 2017, Mrs. Hook's husband, Joseph D. Hook was arrested on charges of child molestation. As of this filing no disposition of those charges has ever been reached.

16. Since Mr. Hook's arrest, Defendant Schmelzle, Defendant Sampson and other currently unknown individuals working for the Indiana Family & Social Services Administration have systematically worked to disrupt with the ultimately goal of shutting down Mrs. Hook's business.

17. On or about May 10, 2017, Defendant Norvell notified Mrs. Hook that the Indiana Family & Social Services Administration ("FSSA") was seeking to revoke the licenses for all three her child care locations.

18. The alleged basis of the revocation was that:

> On 1/24/17, you signed an agreement with the Office of Early Childhood & Out of School Learning that your spouse would not be allowed in the child care homes. According to the principal of a local elementary school, on 3/13/17 and 3/14/17, your spouse, representing himself as part of the child care, picked up a child from kindergarten and transported him to a house around the corner from one of the child cares. According to child care staff, the child would then have to walk alone to the home, which is located on a busy highway.

19. A June 12, 2017, notice informed Mrs. Hook that effective May 31, 2017 she would no longer be eligible to receive CCDF voucher payments.

20. On or about June 13, 2017 Mrs. Hook appealed the decision to revoke her licenses.

21. Mrs. Hook did not allow Mr. Hook to violate the January 24, 2017 agreement not to be "in any of the child care homes during child care hours."

22. According to Defendant Schmelzle, she was the one that prepared the allegation which formed the basis of the revocation.

23. Defendant Schmelzle, with FSSA's counsel Brett Haacker present, acknowledged that the "child care staff" member who allegedly stated "the child would then have to walk alone to the home" was in fact Mrs. Hook. Defendant Schmelzle acknowledged during the interview that portion of the allegation likely was not accurate.

24. The only aspect of the allegation which could have advanced an issue was the claim that "according to the principal of a local elementary school, on 3/13/17 and 3/14/17, [Mr. Hook], representing himself as part of the child care, picked up a child from kindergarten." Mr. Hook's picking up of a child from school was not a violation of the January 24, 2017 agreement. According to the school's principal, Mr. Hook never made such a statement.

25. Mr. Haacker, acknowledged prior to a hearing of Mrs. Hook's appeal that information learned through investigation of the allegation revealed that it was completely unsupported by the facts.

26. Because of Mr. Haacker's acknowledgment, Mrs. Hook agreed to a continuance of the hearing in order for Mr. Haacker to have time to explain to his clients that there was no basis for the revocation as it presently existed.

27. Following the continuance, Defendant Schmelzle, Defendant Sampson and currently unknown employees of the Indiana Family & Social Services Administration pursued an agenda to find or create a basis to revoke Mrs. Hook's child care licenses.

28. Defendants hired a private investigator to sit outside of Mrs. Hook's home, daycare and to follow her around town.

29. On August 7, 2017, Mrs. Hook learned that Defendant Schmelzle posted on the FSSA website, which is accessible to anyone looking for child care services, that Mrs. Hook's daycare licenses had been revoked. In fact, the licenses have not been revoked, and Mrs. Hook continued to operate her child care facilities.

30. On September 27, 2017, Defendant Featherstone, while meeting with a parent of children who attend Mrs. Hook's childcare facilities, made statements to the parent that Mr. Hook was a child molester and that her children were not safe around him. Mr. Hook has not been convicted of any crime.

31. Defendant Featherstone told a parent that she should find alternate daycare. She stated that if the parent did not find alternative daycare that during the parent's upcoming court hearing regarding an abusive father's contact with the children she would inform the court that the parent allowed her children to associate with Mr. Hook.

32. Defendant Hodge interviewed multiple parents and children who were students at Hook's Child Daycare and told them that they had to remove their children from the facility.

33. As a result of Defendant Hodge's statements a number of parents withdrew their children from Hook's Child Daycare.

34. Defendant Sampson and Defendant Schmelzle have made statements to parents of Hook's Child Daycare students that Mr. Hook is guilty and confessed to the charges pending against him. As a result of those statements parents have withdrawn their children from Hook's Child Daycare causing financial harm to the business.

35. Defendant Sampson and Defendant Schmelzle have made statements to parents of Hook's Child Daycare students that the business was closing and that they needed to make other child care arrangements.

36. On September 12, 2017 Defendants mailed to Mrs. Hook a list of items necessary for license renewal which had been prepared on August 22, 2017. The information was required to be supplied by October 1, 2017. The three week delay gave Mrs. Hook only two weeks to comply with the demand or lose her license.

37. Following the decision to revoke, Defendant Schmelzle made multiple visits to Mrs. Hook's child care facilities and made demands which were either outside of her discretion or which were inconsistently and arbitrarily imposed upon Mrs. Hook and not imposed against other child care providers.

38. Defendant Schmelzle demanded that Mrs. Hook cut her grass shorter – even though it had just been cut. She demanded that the fence be repaired – even though it was not broken. She claimed that the yard contained broken toys – even though there were none. She claimed that a gas can for a mower was in the yard while the grass was being cut – even though there were no children at the facility at the time. Defendant Schmelzle told Mrs. Hook she must remove her trampoline – even though other child care facilities were allowed to have them. She told Mrs. Hook that she must install swinging gates – even though there is no policy or procedure which requires them.

39. Mrs. Hook notified Defendant Schmelzle that she intended to close the child care in her personal home for a period of time to perform repairs – Defendant Schmelzle responded that she would be immediately be shut down.

40. Other child care facilities whom Defendant Schmelzle is obligated to inspect have had broken fences or no fences, trampolines and chemicals left in the open on the patio without right-up or penalty.

41. Other child care providers have closed for extended periods of time with no action taken against their licenses.

42. On or about November 8, 2017, a hearing was had before the administrative law judge for the sole purpose of resolving the issue regarding the revocation of Mrs. Hook's child care home licenses.

43. On or about January 4, 2018, after briefing and hearing of the facts and issues, the administrative law judge issued orders in all three licensing actions the she did not sustain the revocation of Mrs. Hook's child care home licenses.

44. Following the failed attempt to revoke her licenses, Defendants have continued to raise issues alleging multiple violations all in an effort to revoke Mrs. Hook's child daycare licenses.

45. Despite several requests, Defendants have refused to provide Mrs. Hook with citations to the statutes, rules and/or regulations she is said to have violated.

## V.  CAUSES OF ACTION

**Causes of Action I through V**
**Violations of 42 U.S.C. §1983**

Mrs. Hook re-asserts, re-alleges, and incorporates by reference the statements contained in paragraphs 1 through 45 this Complaint, as if those statements were fully articulated within this cause of action.

46. Pursuant to 42 U.S.C. §1983, persons deprived of federal constitutional rights may bring a private action for damages against individual officers and units of local government.

47. The Due Process Clause of the Fifth and Fourteenth Amendments prohibits deprivation of life, liberty, and property without due process of law.

48. A deprivation of a protected Fourteenth Amendment liberty interest occurs when a right

or status previously recognized by state law is distinctly altered or extinguished.

49. To properly plead a due process claim under § 1983, a plaintiff must sufficiently allege (1) that she had a cognizable liberty interest under the Fourteenth Amendment; (2) that she was deprived of that liberty interest by a state actor; (3) and that the deprivation was without due process.

50. All of the Defendants are state actors whose actions, individually and collectively have stigmatized Mrs. Hook whereby it has become impossible for her to operate in her chosen profession resulting in the loss of her liberty interest to operate an in home child daycare service.

### Cause of Action I
### Violations of 42 U.S.C. §1983
### By Nicole Norvell

51. In her personal capacity Defendant Norvell initiated the proceedings to revoke Mrs. Hook's child care license which incorporated the false charge of violating the January 24, 2017 consent agreement.

52. Since the ALJ ruling not to sustain her decision to revoke Mrs. Hook's child care licenses, Defendant Norvell has worked individually and in concert with other named Defendants to fabricate alleged violations in an effort to revoke Mrs. Hook's child care licenses.

53. Defendant Norvell's personal actions have violated Mrs. Hook's liberty interests as protected by the Fifth and Fourteenth Amendments.

**Cause of Action II**
**Violations of 42 U.S.C. §1983**
**By Debbie Sampson**

54. On information and belief, Defendant Sampson was personally involved in the decision to revoke Mrs. Hook's child care licenses.

55. Prior to and since the ALJ ruling not to sustain the decision to revoke Mrs. Hook's child care licenses, Defendant Sampson has worked individually and in concert with other named Defendants to fabricate alleged violations in an effort to revoke Mrs. Hook's child care licenses.

56. Defendant Sampson's personal actions have violated Mrs. Hook's liberty interests as protected by the Fifth and Fourteenth Amendments.

**Cause of Action III**
**Violations of 42 U.S.C. §1983**
**By Kelly Schmelzle**

57. Defendant Schmelzle abused her authority by fabricating the complaint that formed the basis of the decision to revoke Mrs. Hook's child care licenses.

58. At all times relevant, Defendant Schmelzle knew that the information used as the basis of the revocation proceeding was false.

59. Defendant Schmelzle has abused her authority by creating false accusations of violations which either did not occur or for which there is no rule, statute or procedure that could be violated.

60. In an effort to revoke Mrs. Hook's child care licenses, Defendant Schmelzle has abused her authority by holding Mrs. Hook to a standard far beyond that established by any rule, statute or procedure or to which she does not hold other child care services for which she is the licensing consultant.

61. Before and since the ALJ ruling not to sustain the decision to revoke Mrs. Hook's child care licenses, Defendant Schmelzle has worked individually and in concert with other named Defendants to fabricate alleged violations in an effort to revoke Mrs. Hook's child care licenses.

62. Defendant Schmelzle's personal actions have violated Mrs. Hook's liberty interests as protected by the Fifth and Fourteenth Amendments.

### Cause of Action IV
### Violations of 42 U.S.C. §1983
### By Christine Featherstone

63. Defendant Featherstone abused her authority as a case worker for the Family and Social Service Administration when she told the parent of children who attend Mrs. Hook's childcare facilities that Mr. Hook was a child molester and threatened that if the parent did not find alternative daycare she would inform the court that the parent allowed her children to associate with Mr. Hook, all of this was in an effort to stop the parent from sending her children to Mrs. Hook's childcare facilities.

64. Defendant Fetherstone's personal actions have violated Mrs. Hook's liberty interests as protected by the Fifth and Fourteenth Amendments.

### Cause of Action V
### Violations of 42 U.S.C. §1983
### By Cathy Hodge

65. Defendant Hodge abused her authority as an agent for Indiana Department of Child Services when she interviewed multiple parents and children who were students at Hook's Child Daycare and told them that they had to remove their children from the facility.

66. Defendant Hodge's personal actions have violated Mrs. Hook's liberty interests as protected by the Fifth and Fourteenth Amendments.

## Cause of Action VI through X
## Tortuous Interference with Business

Mrs. Hook re-asserts, re-alleges, and incorporates by reference the statements contained in paragraphs 1 through 66 this Complaint, as if those statements were fully articulated within this cause of action.

67. Elements of intentional interference with a business relationship are: (1) the existence of a valid relationship; (2) the defendant's knowledge of the existence of the relationship; (3) the defendant's intentional interference with that relationship; (4) the absence of justification; and (5) damages resulting from defendant's wrongful interference with the relationship.

68. As set forth below, the Defendants' breach their duty to Mrs. Hook proximately causing her damages.

## Cause of Action VI
## Negligence by Nicole Norvell

69. Defendant Norvell was aware that Mrs. Hook operated a home based daycare service under the name of Hook's Child Daycare as well as the relationship she had with various parents in order to maintain that business.

70. Defendant Norvell was aware that if parents removed their children from Hook's Child Daycare that Mrs. Hook would not be able to sustain her business.

71. Defendant Norvell intended to interfere with and disrupt Mrs. Hook's business when she issued the letter of revocation.

72. Defendant Norvell tortuously interfered with Mrs. Hook's business without justification when she failed to question the factual support for allegations setting forth the basis for license revocation prior to issuing the letter to revoke.

73. On information and belief Defendant Norvell continues to engage in conduct which tortuously interferes with Mrs. Hook's business.

## Cause of Action VII
### Negligence by Debbie Sampson

74. Defendant Sampson was aware that Mrs. Hook operated a home based daycare service under the name of Hook's Child Daycare as well as the relationship she had with various parents in order to maintain that business.

75. Defendant Sampson was aware that if parents removed their children from Hook's Child Daycare that Mrs. Hook would not be able to sustain her business.

76. Defendant Sampson intended to interfere with and disrupt Mrs. Hook's business when she was involved in the decision to revoke Mrs. Hook's child care licenses.

77. Defendant Sampson tortuously interfered with Mrs. Hook's business without justification when she failed to question the factual support for the allegations setting forth the basis for license revocation.

78. Defendant Sampson has tortuously interfered with Mrs. Hook's business by her statements to parents of Hook's Child Daycare students that Mr. Hook is guilty and confessed to the charges pending against him, and as a result of those statements parents have withdrawn their children from Hook's Child Daycare causing financial harm to the business.

79. Defendant Sampson has tortuously interfered with Mrs. Hook's business by her statements to parents of Hook's Child Daycare students that the business was closing and that they needed to make other child care arrangements.

80. On information and belief Defendant Sampson continues to engage in conduct which tortuously interferes with Mrs. Hook's business.

### Cause of Action VIII
### Negligence by Kelly Schmelzle

81. Defendant Schmelzle was aware that Mrs. Hook operated a home based daycare service under the name of Hook's Child Daycare as well as the relationship she had with various parents in order to maintain that business.

82. Defendant Schmelzle was aware that if parents removed their children from Hook's Child Daycare that Mrs. Hook would not be able to sustain her business.

83. Defendant Schmelzle tortuously interfered with Mrs. Hook's business without justification by her submission of allegations setting forth the basis for license revocation which she knew were unsupported by the facts.

84. Defendant Schmelzle has tortuously interfered with Mrs. Hook's business by her statements to parents of Hook's Child Daycare students that Mr. Hook is guilty and confessed to the charges pending against him, and as a result of those statements parents have withdrawn their children from Hook's Child Daycare causing financial harm to the business.

85. Defendant Schmelzle has tortuously interfered with Mrs. Hook's business by her statements to parents of Hook's Child Daycare students that the business was closing and that they needed to make other child care arrangements.

86. Defendant Schmelzle continues to engage in conduct which tortuously interferes with Mrs. Hook's business through her unfounded and baseless claims of violations.

87. Defendant Schmelzle continues to engage in conduct which tortuously interferes with Mrs. Hook's business through her disparate application of policies, rules and procedures compared to other home daycare providers.

## Cause of Action IX
### Negligence by Christine Featherstone

88. Defendant Featherstone was aware that Mrs. Hook operated a home based daycare service under the name of Hook's Child Daycare as well as the relationship she had with various parents in order to maintain that business.

89. Defendant Featherstone was aware that if parents removed their children from Hook's Child Daycare that Mrs. Hook would not be able to sustain her business.

90. Defendant Featherstone has tortuously interfered with Mrs. Hook's business without justification by her statement to at least one parent of Hook's Child Daycare students that Mr. Hook is a child molester and that they needed to make other child care arrangements.

91. Defendant Featherstone tortuously interfered with Mrs. Hook's business without justification when she told the parent of children who attend Mrs. Hook's childcare facilities that Mr. Hook was a child molester and threatened that if the parent did not find alternative daycare she would inform the court that the parent allowed her children to associate with Mr. Hook.

92. Defendant Featherstone intended to interfere with and disrupt Mrs. Hook's business when she threatened the parent that they must find alternative child care.

## Cause of Action X
### Negligence by Cathy Hodge

93. Defendant Hodge was aware that Mrs. Hook operated a home based daycare service under the name of Hook's Child Daycare as well as the relationship she had with various parents in order to maintain that business.

94. Defendant Hodge was aware that if parents removed their children from Hook's Child Daycare that Mrs. Hook would not be able to sustain her business.

95. Defendant Hodge tortuously interfered with Mrs. Hook's business without justification when she told parents that they must remove their children from Mrs. Hook's daycare facility.

96. Defendant Hodge intended to interfere with and disrupt Mrs. Hook's business when she told parents that they must find alternative child care.

## Cause of Action XI
### Declaratory Relief

Mrs. Hook re-asserts, re-alleges, and incorporates by reference the statements contained in paragraphs 1 through 96 of this complaint, as if those statements were fully articulated within this cause of action.

97. A court may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought.

98. Mrs. Hook seeks the Court to declare that the Defendants, each by and through their individual actions, have tortuously interfered with her business.

99. Mrs. Hook seeks the Court to declare that the Defendants, each by and through their individual actions, have violated her Fifth Amendment Rights.

## VI. **GENERAL CAUSATION AND DAMAGES**

100. As a direct and proximate result of the foregoing Causes of Action, Mrs. Hook has suffered and continues to suffer irreparable injuries relating to losses of income, property, and wealth and injury to physical and emotional health and general well-being.

101. As a direct and proximate result of the foregoing counts, Mrs. Hook has suffered damages as stated herein and in an amount to be proven at trial, plus an appropriate amount for her emotional pain and suffering, and punitive damages to be determined.

## VII. **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, Amanda Hook, prays this Court grant relief against the named Defendants under her claims as asserted above in the following manner including but not limited to:

    a. An award of full, fair and adequate compensation for all injuries, damages and losses sustained and for costs herein laid out and expended;

    b. An award of punitive damages in an amount sufficient to deter Defendants from the conduct complained of herein;

    c. Declaratory relief as sought herein;

    d. An award of reasonable attorney's fees incurred as a result of this litigation;

    e. Pre and Post Judgment interest, and

    f. For all other necessary and proper relief in the premises.

## VIII. **DEMAND FOR JURY**

Comes now Plaintiff, Amanda Hook, by and through the undersigned counsel, and respectfully requests a trial by jury as to all claims asserted herein.

RESPECTFULLY SUBMITTED:

Date: March 15, 2019

*James Clayton Culotta*
Bar No. 26733-11
815 E. Market Street
New Albany, IN 47150
Telephone No. (812) 941-8886 ext. 24
Facsimile No. (812) 941-8883
clay@culottalaw.com