UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| AMANDA HOOK, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 4:19-cv-00049-TWP-DML |
| | ) | |
| NICOLE NORVELL, DEBBIE SAMPSON | ) | |
| KELLY SCHMELZLE, CHRISTINE | ) | |
| FEATHERSTONE and CATHY HODGE, | ) | |
| | ) | |
| Defendant. | ) | |

## ENTRY GRANTING DEFENDANTS' MOTION TO DISMISS

This matter is before the Court on a Motion to Dismiss filed pursuant to Federal Rule of Civil Procedure 12(b)(6) by Defendants Nicole Norvell ("Norvell"), Debbie Sampson ("Sampson"), Kelly Schmelzle ("Schmelzle"), Christine Featherstone ("Featherstone") and Cathy Hodge ("Hodge") (collectively, "Defendants") (Filing No. 14). The Defendants are each employees of the State of Indiana. Plaintiff Amanda Hook ("Hook") initiated this action against the Defendants after she nearly lost her child daycare licenses based on Defendants' false claims that Hook violated a stay away agreement concerning Hook's husband who is criminally charged with four counts of child molestation. Hook is seeking relief for Fourteenth Amendment Due Process violations pursuant to 42 U.S.C. § 1983 and ancillary state tort claims. For the reasons discussed below, the Defendants' Motion is **granted**.

### I. BACKGROUND

The following facts are not necessarily objectively true, but as required when reviewing a motion to dismiss, the Court accepts as true all factual allegations in the Complaint and draws all inferences in favor of Hook as the non-moving party. *See Bielanski v. County of Kane*, 550 F.3d 632, 633 (7th Cir. 2008).

Hook is the owner and operator of Hook's Child Daycare, an unincorporated entity which operates three separate childcare facilities in the Madison, Indiana area. Each facility is required to have a separate operating license. The Defendants are each employees of the State of Indiana. Norvell is the Director of the Family and Social Services Administration ("FSSA"), in Indiana; Sampson is the Manager of FSSA; Schmelzle is a Licensing Consultant with FSSA; Featherstone is a case worker with FSSA; and Hodge works for the Indiana Department of Child Services.

In January 2017, Hook's husband, Joseph Hook, was under investigation for child molestation. In order to keep operating her licensed childcare facilities, Hook was required to sign a Consent Agreement (the "Agreement") with the State of Indiana. The Agreement, signed on January 24, 2017, stated in relevant part, that: "**Joseph Hook II (JD) will not be allowed in any of the child care homes during child care hours**." (Filing No. 1 at 3-4) (emphasis in original). No other restrictions were imposed.

In March 2017, Joseph Hook was criminally charged with four counts of child molestation in Jefferson County Circuit Court, *State v. Joseph D. Hook*, 39C01-1703-F1-00234.[1] Following Joseph Hook's arrest, Schmelzle, Sampson and unknown staff at FSSA have systematically worked to disrupt with the goal of shutting down Hook's businesses. (Filing No. 1 at 4.)

In May 2017, Norvell notified Hook that FSSA was seeking to revoke the licenses at her three childcare locations. The alleged basis of the revocation was:

> On 1/224/17 you signed an agreement with the Office of Early Childhood & Out of School Learning that your spouse would not be allowed in the child care homes. According to the principal of a local elementary school, on 3/13/17 and 3/14/17, your spouse, representing himself as part of the child care, picked up a child from kindergarten and transported him to a house around the corner from one of the child cares. According to child care staff, the child would then have to walk alone to the home, which is located on a busy highway.

---

[1] The case, *State of Indiana vs. Joseph D. Hook*, remains pending; however, the case is no longer in Jefferson County Superior Court. A special judge was appointed and the case is now pending in Jennings County Circuit Court, Jennings County, Indiana. The case number now is 40C01-1906-CB-000036. https://public.courts.in.gov/mycase.

(Filing No. 1 at 4.)  A notice dated June 12, 2017 informed Hook that retroactively, she would no longer be eligible to receive CCDF[2] voucher payments from the State.  *Id*.  On June 13, 2017, Hook filed an appeal of FSSA's decision to seek revocation of her licenses.  Thereafter, from August to September 2017, the Defendants, who are employees and agents of FSSA, and the Indiana Department of Child Services, pursued an agenda to find or create a basis to revoke Hook's childcare licenses to operate her facilities.  *Id*. at 5.  Specifically,

> 1. Norvell initiated the proceedings to revoke Hook's childcare license which incorporated the false charge of violating the Agreement.  (Filing No. 1 at 9 ¶ 51.)
>
> 2. Schmelzle prepared the allegation which formed the basis of the revocation. The entire statement had been fabricated and was untrue. In August 2017, Hook discovered that Schmelzle posted on the FSSA website, which is accessible to anyone looking for childcare services, that Hook's daycare licenses had been revoked when they had not been revoked. Schmelzle made multiple visits to Hook's childcare facilities and made demands which were either outside of her discretion or which were inconsistently and arbitrarily imposed upon Hook and not imposed against other childcare providers.
>
> 3. Sampson (along with Schmelzle) told parents of Hook's Child Daycare students that Joseph Hook is guilty and confessed to the charges pending against him. As a result of those statements parents have withdrawn their children from Hook's Child Daycare causing financial harm to the business. Sampson and Schmelzle also told parents of Hook's Child Daycare students that the business was closing and that they needed to make other childcare arrangements.
>
> 4. Featherstone told a parent of children who attend Hook's childcare facilities that Joseph Hook was a child molester and that her children were not safe around him.  Featherstone told a parent to find alternate daycare.
>
> 5. Hodge interviewed multiple parents and children who were students at Hook's Child Daycare and told them that they had to remove their children from the facility. As a result of Hodge's statements a number of parents withdrew their children from Hook's daycare facility.

---

[2] The Child Care and Development Fund (CCDF) is a federal program that helps low-income families obtain child care so that they may work, attend training or continue their education. The purpose of CCDF is to increase the availability, affordability and quality of child care. https://www.in.gov/fssa/carefinder/3900.htm

3

On November 8, 2017, a hearing was held before the administrative law judge to determine the issue regarding the revocation of Hook's childcare home licenses. On or about January 4, 2018, after briefing and hearing of the facts and issues, the administrative law judge issued orders in all three licensing actions stating that she did not sustain the revocation of Hook's childcare home licenses. In other words, FSSA was unsuccessful at the agency level and the administrative law judge found in favor of Hook and against revocation of her licenses. Following the administrative law judge's ruling, the Defendants continued to work individually and in concert to fabricate alleged violations in an effort to revoke Hook's childcare licenses. (Filing No. 1 at 8-12.)

On March 15, 2019, Hook filed the instant Complaint seeking relief for Fourteenth Amendment Due Process violations pursuant to 42 U.S.C. § 1983 and ancillary state tort claims. Hook does not challenge the administrative process whereby she saw success; rather, she argues that the actions by the Defendants "individually and collectively," during and since the administrative process "have stigmatized" her and deprived her of a liberty interest because it has "become impossible for her to operate in her chosen profession… operate[ing] an in home child daycare service."  (Filing No. 1 at 9 ¶ 50.)

## II.   LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(6) allows a defendant to move to dismiss a complaint that has failed to "state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). When deciding a motion to dismiss under Rule 12(b)(6), the court accepts as true all factual allegations in the complaint and draws all inferences in favor of the plaintiff. *Bielanski*, 550 F.3d at 633. However, courts "are not obliged to accept as true legal conclusions or unsupported conclusions of fact." *Hickey v. O'Bannon*, 287 F.3d 656, 658 (7th Cir. 2002).

The complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). In *Bell Atlantic Corp. v. Twombly*, the United States Supreme Court explained that the complaint must allege facts that are "enough to raise a right to relief above the speculative level." 550 U.S. 544, 555 (2007). Although "detailed factual allegations" are not required, mere "labels," "conclusions," or "formulaic recitation[s] of the elements of a cause of action" are insufficient. *Id.*; *see also Bissessur v. Ind. Univ. Bd. of Trs.*, 581 F.3d 599, 603 (7th Cir. 2009) ("it is not enough to give a threadbare recitation of the elements of a claim without factual support"). The allegations must "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Twombly*, 550 U.S. at 555. Stated differently, the complaint must include "enough facts to state a claim to relief that is plausible on its face." *Hecker v. Deere & Co.*, 556 F.3d 575, 580 (7th Cir. 2009) (citation and quotation marks omitted). To be facially plausible, the complaint must allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556).

## III. DISCUSSION

Hook makes the following claims in her Complaint: Causes of Action I through V: Violation of 42 U.S.C. § 1983 by each individual Defendant; Causes of Action VI through X[3]: Tortuous Interference with Business; Causes of Action XI through XV: Negligence by the individual Defendants; and Cause of Action XVI: Declaratory Relief. (Filing No. 1, p. 9-16.) The Defendants argue that Hook has failed to state a due process claim against them in Causes of Action I-V and Cause of Action XVI of the Complaint, and that dismissal is appropriate on the

---

[3] Plaintiff mistakenly mis-numbered her causes of action. Cause of action VI-X are listed as Tortious Interference with Business, and Cause of Action VI is also listed as Negligence by Norvell. The Court has corrected the counts so that they are addressed sequentially in this entry.

state law claims because Defendants are entitled to immunity.  The Court will first address the federal claims before turning to the state law claims.

A.     **Fourteenth Amendment Federal Claims (Causes of Action I-V and Cause of Action XVI)**

Under the Fourteenth Amendment, the Due Process Clause "forbids a state to deprive any person of 'life, liberty, or property, without due process of law.'"  *Dupuy v. Samuels*, 397 F.3d 493, 503 (7th Cir. 2005) (*citing U.S. Const. amend. XIV, § 1*).  "Procedural due  process claims require a two-step analysis.  The first step requires us to determine whether the plaintiff has been deprived of a protected interest; the second requires a determination of what process is due."  *Townsend v. Vallas*, 256 F.3d 661, 673 (7th Cir. 2001) (quoting *Strasburger v. Board of Educ., Hardin County Cmty. Unit Sch. Dist. No. 1*, 143 F.3d 351, 358 (7th Cir. 1998)). )).  The general test for determining what process is due and when is stated in *Mathews v. Eldridge*, 424 U.S. 319 (1976).  *Mathews* identified three factors to be balanced: first, the private interest at stake; second, the risk of erroneous deprivation and the value, if any, of additional procedural safeguards; and third, the government's countervailing interests.  *Id.*  Thus, the key question that the Court must ask is "whether there exists a liberty or property interest which has been interfered with by the State; [and] whether the procedures attendant upon that deprivation were constitutionally sufficient."  *Id.* at 503. (internal quotations omitted) (*citing Kentucky Dep't of Corr. v. Thompson*, 490 U.S. 454, 460 (1989).

Hook does not challenge the administrative process which she successfully defended against the license revocation; rather, she argues that the actions by the individual Defendants during and since the administrative process deprived her of a liberty interest. Specifically, Hook's alleges "[a]ll of the Defendants are sate actors whose actions, individually and collectively have

6

stigmatized Mrs. Hook whereby it has become impossible for her to operate in her chosen profession resulting in the loss of her liberty interest to operate an in home child daycare service." (Filing No. 1 at 9 ¶50.)

The Defendants argue that Hook has asserted a legal conclusion of "impossibility," but she has not pled allegations that have shown the actions of the individual Defendants have created an absolute bar to her continued operation of Hook's Child Daycare. They point out that Hook's Complaint does not allege that she has closed down her daycare. Instead, Hook's assertions that Norvell, Sampson and Schmelzle "continue to engage in conduct to interfere with her businesses" show that Hook is still maintaining the operation of her businesses. (Filing No. 1 at 12-15, ¶¶ 73, 80, 87.) Because Hook's licenses were never revoked and her daycare centers remain open, the Defendants argue Hook's allegations that "it has become impossible for her to operate her chosen profession" do not give rise to a liberty interest in pursuing her chosen profession. *See Lawson v. Sheriff of Tippecanoe Co., Indiana*, 725 F.2d 1136, 1139 (7th Cir. 1984) (employee's liberty interest may be infringed when stated reasons for termination "make him all but unemployable in the future"); *Townsend v. Vallas*, 256 F.3d 661, 670 (7th Cir. 2001) (stating, "the employee must show that, because the charges have been made, it is unlikely that anyone will hire him for a comparable job in the future.").

In support of their position, Defendants cite to *Hunt v. Indiana Fam. & Soc. Services Admin*. 2007 WL 2349626, at *8 (S.D. Ind. Aug. 1, 2007) (J. Tinder). In *Hunt*, the state received information that Hunt had injured a child in her care and the state sought not only to revoke Hunt's childcare licensure but caused criminal charges to be filed against Hunt. *Id*. at *3-4. An administrative law judge rescinded the licensure revocation, and Hunt prevailed on the criminal charges. *Id*. at *1. The court ultimately held,

> A total loss of business would preclude employment in her chosen field. But her loss was not total. The defendants' investigation of the abuse allegation and the subsequent proceedings did not make it impossible for her business to remain open, and thus any damage to her reputation by the state did not trigger a liberty or property interest.

*Id*. at *10. Stated otherwise, "[m]erely showing some impairment to employment is not sufficient to trigger the constitutional requirements of due process." *Id*. (citing *Siegert v. Gilley*, 500 U.S. 226, 234 (1991).

Defendants also argue the actions alleged to have been committed by the individual Defendants in the Complaint fail to state a cognizable liberty interest for purposes of the Fourteenth Amendment Due Process. Defendants assert that here, while the actions of the individuals may have impaired Hook's ability to operate her day care businesses, the Complaint list no actions that have resulted in a constitutional deprivation. It is well-established that a plaintiff can only bring a § 1983 against those individuals personally responsible for the Constitutional deprivation. *Sanville v. McCaughtry*, 266 F.3d 724, 740 (7th Cir. 2001). Furthermore, "[c]ounties and other governmental entities may not be held liable for the unconstitutional acts under a respondeat superior theory." *Gee v. Sharp*, WL 899655, at *10 (citing *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978); *Lewis v. City of Chicago*, 496 F.3d 645, 656 (7th Cir. 2007)). Accordingly, "a plaintiff must plead that each Government-official defendant through the official's own individual actions, has violated the Constitution." *Ashcroft* at 676. For these reasons, Defendants argue Causes of Action I-V and Cause of Action XI must be dismissed.

In Response, Hook points out that her Complaint clearly articulates as to each individual Defendant their personal actions which resulted in their being named in this action. She argues that while the *Hunt* court found that Hunt's loss was not total, it did not say that was the only criteria. Hook distinguishes the facts in her Complaint from those in *Hunt*, noting that the state

8

defendants in *Hunt* ended their actionable harm with the favorable hearing outcome. (Filing No. 16 at 9.) In her Complaint, Hook alleges that the Defendants continue to fabricate violations and continue their campaign to put her out of business. (Filing No. 1 at 2-12.) Hook contends this is a due process violation. She argues she has been forced to close one of her facilities, another has a single student on a periodic basis and the third is not full. Thus, Hook contends her losses are not the result of merely being stigmatized by Defendants' comments about her and her husband, but rather, two blatant and direct acts of the Defendants.

Hook has a protected property interest in her daycare licenses. A protected property interest arises when there is a legitimate claim of entitlement to the benefit. *DeSalle v. Wright*, 969 F.2d 273, 277 (7th Cir. 1992). Here, Hook's state licenses entitled her to operate her daycare businesses. *See, e.g.*, *Easter House v. Felder*, 910 F.2d 1387, 1395 (7th Cir. 1990) (noting that private adoption agency had a property interest in the renewal of its license). However, in her Complaint, Hook proceeds only under the theory that she was deprived of a liberty interest. Individuals also have a liberty interest in being able to pursue an occupation. *See Townsend v. Vallas*, 256 F.3d 661, 669 (7th Cir. 2001). The state's revocation of her licenses would have foreclosed Hook's chosen field.

However, Hook's licenses were not revoked and she has not stated cognizable claim that she was deprived of the process that she was due. The Complaint does not allege that her businesses were closed either before or after her success at the administrative hearing. Instead, the Complaint states that Hook was "stigmatized" by the Defendants' statements that her husband was a child molester. Defendants' statements and warnings that parents should find another childcare facility is insufficient to establish a deprivation of liberty. *Beishel v. Stone Bank School Dist.*, 362 F.3d 430, 439 (7th Cir. 2004) (defamatory statements by a government official, without more, does not constitute a deprivation of liberty).

In her response, Hook argues that she has been forced to close one of her facilities, another has a single student on a periodic basis, and the third is not full. She contends these losses are not the result of being stigmatized by Defendants' comments about her and her husband, but rather, two blatant and direct acts by the Defendants. (Filing No. 16 at 9-10.) She states that the Defendants refuse to refer Hook's Child Daycare as an eligible daycare facility, and they have told and continue to tell parents that they must find alternative childcare or face retribution as to their own parental rights. *Id*. She further argues she was treated differently than other child care owners in violation of equal protections under the law. *Id*. at 11. However, none of the allegations regarding closure of her facilities is contained in the Complaint, and there is no equal protection claim in the Complaint.

As pled, the Complaint does not state a claim which shows the individual Defendants infringed on any constitutionally protected property or liberty interests of Hook. "A person has no cognizable liberty interest in his reputation; consequently, allegations which merely damage one's reputation do not implicate a liberty interest." *Id.* "[I]t is only the 'alteration of a legal status,' such as governmental deprivation of a right previously held, 'which, combined with the injury resulting from the defamation, justif[ies] the invocation of procedural safeguards." *Dupuy v. Samuels*, 397 F.3d 493, 503 (7th Cir. 2005) (quoting *Paul v. Davis*, 424 U.S. 693, 708-09 (1976)). As pointed out by the Defendants in their Reply, by her own admission Hook admits to maintaining operation of her chosen profession, (Filing No. 1 at 9, ¶¶ 73, 80, 87), and in her Response she admits that only after the filing of her Complaint that she "close[d] one of her locations" (Filing No. 16 at 1, n.1), and she continues to operate two facilities. *Id*. at 5. A due process claim exists only if the fabricated evidence is used to cause an infringement of the plaintiff's liberty interest. *Whitlock v. Brueggemann*, 682 F. 3d 567, 580 (7th Cir. 2012) ("We have consistently held that a

10

police officer who manufactures false evidence against a criminal defendant violated due process *if* that evidence is later used to deprive the defendant of her liberty in some way.") (emphasis added).

Although a property interest was at stake in the revocation proceedings, Hook received all the procedural protections required under the Constitution during her administrative hearing. Because her Complaint fails to state a claim for loss of liberty interest, Hook's § 1983 claims arising from a violation of the Fourteenth Amendment's Due Process Clause, are **dismissed**.

In a footnote, the Defendants explain Hook's Fifth Amendment due process claim in Cause of Action XVI of the Complaint (Filing No. 1 at 16), fails because the Due Process Clause of the Fifth Amendment applies to actions of the United States while the Due Process Clause of the Fourteenth Amendment applies to the States. *See O'Brien v. City of Frankfort*, 2018 WL 4620265, at *5 (S.D. Ind. Sept. 26, 2018) (") (citing *Dusenbery v. U.S.* 534 U.S. 161, 167 (2002)). Hook does not dispute the Defendants persuasive argument. Accordingly, because Hook's Complaint asserts claims against actions performed by state employees and not federal employees, she does not have a Fifth Amendment claim and her Fifth Amendment claim is **dismissed**.

**B.    State Law Tort Claims (Causes of Action VI-XV)**

Indiana Code § 34-13-3-5(b) states, "a lawsuit alleging that an employee acted within the scope of the employee's employment bars an action by the claimant against the employee personally." The Indiana Supreme Court defines 'scope of employment' as "conduct of the same general nature as that authorized, or incidental to the conduct authorized". *Celebration Fireworks, Inc. v. Smith*, 727 N.E.2d 450, 453 (Ind.2000) (quoting Restatement (Second) Agency § 229 (1958)). "Even tortious acts may fall within the scope of employment." *Id*.

With respect to the state law tort claims of Tortious Interference with Business (Causes of Action VI-X) and Negligence (Causes of Action XI-XV), the Defendants argue that they are entitled to immunity under the Indiana Tort Claims Act. Defendants point out that these claims are asserted against five employees of the Indiana Family and Social Services Administration and Department of Child Services. (Filing No. 1 at 3, ¶¶ 7-11.) While Hook's subsequent allegations may imply illegal or tortious behavior (on the part of all defendants), the Defendants are entitled to immunity under the Indiana Tort Claims Act as they were alleged to have been acting in their respective roles for their respective state agencies "so situated at the time of the acts." See *Bowens v. City of Indianapolis*, 1:13-CV-00072-DML-SE, 2014 WL 4680662, at *5 (S.D. Ind. Sept. 19, 2014) (dismissal of claims of assault, battery, etc. against police officer under ITCA).

Defendants argue that although Ind. Code § 34-13-3-5(c), provides an exception to the rules, Ind. Code § 34-13-3-5(c), Hook's bare assertions of "tortious interference" and negligence are nothing more than a legal conclusions/conclusory statements insufficient to meet the standard under subsection (c) that requires "a reasonable factual basis supporting the allegations." Ind. Code § 34-13-3-5(c). As pled in the Complaint, Defendants assert they are entitled to immunity afforded to state employees by the Indiana Tort Claims Act.

In her response, Hook does not directly address the Defendants' immunity argument. Instead, she explains that she "reasonably believes that discovery will show that the Defendants' wrongful conduct was not authorized or incidental to conduct that was authorized". (Filing No. 16 at 11.) Defendants argue the "wholesale failure to respond to an opposing argument results in waiver." *Citizens for Appropriate Rural Roads, Inc. v. Foxx*, 14 F.Supp.3d. 1217, 1230 (S.D. Ind. 2014).

Having dismissed the federal claims, the Court need not address whether Hook has waived the immunity argument, because the Court elects to proceed in the alternative and will not exercise supplemental jurisdiction over the state law claims. Under 28 U.S.C. § 1367, "a district court 'may decline to exercise supplemental jurisdiction' over state-law claims if the court 'has dismissed all claims over which it has original jurisdiction.'" *John C. & Maureen G. Osborne Revocable Fam. Tr. v. Town of Long Beach, Indiana*, 2018 WL 1471903, at *12 (N.D. Ind. Mar. 26, 2018) (*citing* 28 U.S.C. § 1367(c)(3)). The Seventh Circuit has stated consistently that "the usual practice is to dismiss without prejudice state supplemental claims whenever all federal claims have been dismissed prior to trial." *Groce v. Eli Lilly*, 193 F.3d 496, 501 (7th Cir. 1999); *see Al's Serv. Ctr. v. BP Prods. N. Am., Inc.,* 599 F.3d 720, 727 (7th Cir. 2010) (citing 28 U.S.C. § 1367(c)(3)).

Exceptions to the general rule exist: "(1) when the statute of limitations has run on the pendent claim, precluding the filing of a separate suit in state court; (2) substantial judicial resources have already been committed, so that sending the case to another court will cause a substantial duplication of effort; or (3) when it is absolutely clear how the pendent claims can be decided." *Davis v. Cook Cnty.*, 534 F.3d 650, 654 (7th Cir. 2008) (quoting *Wright v. Associated Ins. Companies Inc.*, 29 F.3d 1244, 1251 (7th Cir. 1994)) (internal quotation marks omitted).

The usual practice shall be followed. Substantial judicial resources have not been expended on these claims and it is not clear how the pendent claims will be decided. The pendent state law claims should be decided in state court because the outcome will be based on the interpretation of Indiana law. These claims shall be **dismissed without prejudice** so that they can be resolved in state court.

## IV. CONCLUSION

For the reasons explained above, Defendants' Motion to Dismiss Hook's Complaint (Filing No. 14) is **GRANTED**. The federal claims in Causes of Action I-V and Cause of Action XVI are **dismissed with prejudice**, for failure to state a claim.[4] Hook's state law claims in Causes of Action VI-XV are **dismissed without prejudice**.

    **SO ORDERED.**

Date: 5/26/2020

                                      TANYA WALTON PRATT, JUDGE
                                      United States District Court
                                      Southern District of Indiana

DISTRIBUTION:

J. Clayton Culotta
CULOTTA & CULOTTA LLP
clay@culottalaw.com

Bryan Findley
INDIANA ATTORNEY GENERAL'S OFFICE
bryan.findley@atg.in.gov

---

[4] The Court notes that Hook has not requested, alternatively, leave to file an amended complaint. If Hook's daycare businesses have continued to operate, it is unlikely she would be able to allege facts giving rise to a valid due process claim. It appears an amended complaint would be futile, therefore this dismissal is with prejudice.